BENJAMIN SERRATOS (AM 3717)
P.O BOX 7500
CRESCENT CITY, CA. 95532

**FILED**
MAR 26 2018
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BENJAMIN SERRATOS III ) NO: 2:18-cv-00077-MCE-KJN P
         Petitioner )
V. ) NOTICE OF EXHAUSTION AND
PEOPLE OF THE STATE OF CALIFORNIA ) SUPPORT THEREOF
         Respondent )

TO: Magistrate Judge Kendall J. Newman/Dist. Judge Morrison C. England, Jr.

A petition for Writ of Habeas Corpus was submitted to the California Supreme Court November 8, 2017 (see attached CDC 119 Legal Mail Out Verification & Date Confirmation November 9, 2017) California Supreme Court Filed November 14, 2017. (S245495)

Supreme Court of Cal. (En Banc) denied as "Untimely" (Inre Robbins (1998) 18 Cal.4th 770,780) Feb 14 2018.

Supreme Court of California Denied Petition for Review of COA Third Appellate District Decision/Opinion on AUGUST 11, 2016.

Copy of CDC 119 is being forwarded to California Supreme.

The Stockton Superior Court of San Joaquin County recently responded with an ORDER EXTENDING TIME TO ISSUE A RULING citing (Cal Rules of Court, Rule 4.551 (h)) Court shall issue ruling on or before April 1, 2018.  Case NO: STK-CR-2018-440

The issues/claims raised in the Writ Of habeas Corpus are of constitutional complexity, furthermore and in addition ...

Recently the San Joaquin County Chief Medical Examiner & Forensic Pathologist DR. Bennet Omalu as well as Dr. Sue Parson made damning allegations against San Joaquin County Sheriff Steve Moore ETL. and provided a resignation letter (See Attached Exhibit 2) asserting Misconduct, Intervening requesting modification of findings-conclusions-opinions, and influence...

1     In the resignation Dr.Omalu dates back his allegations to 2007. ( People V. Serratos) commenced 2010.

    The significance of Dr.Omalu's declaration are that in his resignation Dr.Omalu makes claims "that the Sheriff would request from him to <u>ALTER,MODIFY</u> autopsy reports,opines,findings. This was particularly more prevalent in officer involved cases, as reported previously on different occasions "Cover Up" of real Cause of Death, (Please see Writ Exhibit P) . This demonstrating a culture of fraud and incompetnece and unethical behavior, those in power or with influence excercising that in a manner inconsistant with the law. It was not just Sheriff Steve Moore but also others beneath him who would "leave out" or twist facts/evidence inorder to obtain findings of their preference.

    The reason this is cited in Serratos V. The people of the State of California, is because this case involves a traffic fatality where fault is an issue. Within days of the traffic accident , San Joaquin County Sheriff's Deputy John Nesbitt uncle to decedent driver, retrieved a cell phone from the tow yard where vehicle was being stored. No formal request from the court was sought, nor was CHP protocol followed for the release of material evidence. The evidence had obvious exculpatory value and was intentionally not preserved in police custody and released from police custody without regard to its exculpatory value, a distracted driver presents a danger on the road way.

    The evidence of the cell phone later proved to have been in use at the exact time of the accident,engaged on social media. This imformation later surfacing reluctantly and with a willful attempt by Sheriff Deputy Nesbitt and the prosecution to tailor case.

    As Dr.Omalu asserts this kind of conduct has occured in other cases, along with the fact that the Sheriff would prevent him from attending scenes and hinder his ability to obtain thorough investigations, or receive misleading narratives. (See Exhibit P)

    Further to address is in this case trial counsel was caught off guard when Dr.Omalu was up to testify trial lawyer had him scheduled for another day, and was forced to proceed in questioning Dr.Omalu, unprepared, never getting to critical questions, inspecfic regarding the Cell Phone and decedent uncle law enforcement ties, and if this was disclosed to him, or if the findings or his opine was possibly influenced or altered/modified, since Dr.Omalu issues with Sheriff had been going on dating back to this time.

    Further Dr.Omalus testimony was evasive as to cause of death, and had cited ejection on coroner report, but was not sound in his testimony. It is possible that Dr.Omalu was deceptive in his testimony, and or was denied or deprived of all the evidence and factors of the case.

For the reasons stated above and in totality to the claims on Writ of Habeas Corpus I respectfully request this serve in support of..

(1) Stay & Abeyance/Notice to Exhaust

(2) That an evidentiary hearing be granted on appropriate ground, and that counsel be provided in the interest of justice so that Dr.Omalu can be addressed regarding his recent and additional allegations of the San Joaquin County Sheriff Steve Moore and company...

(3) All other appropriate relief;

Dated: March 20,2018

Respectfully Submitted

_____
Benjamin Serratos III

CDC 119 LEGAL MAIL OUT VERIFICATION TO SUPREME COURT OF CALIFORNIA DATED NOVEMBER 9, 2017.

# Exhibit 1

CDC-119 Ougoing Mail (May 1, 2012 - Present) Query

| CDC # | INMATE NAME | RECIPIENT | CITY, STATE | SENT |
|---|---|---|---|---|
| AM3717 | SERRATO | SUPREME COURT OF CALIFORNIA | SAN FRANCISCO, CA | 11/9/2017 |
| AM3717 | SERRATOS | ATTORNEY GENERAL | SACRAMENTO, CA | 11/9/2017 |
| AM3717 | SERRATOS | THIRD APPELLATE COURT OF APP | SACRAMENTO, CA | 11/9/2017 |
| AM3717 | SERRATOS | ATTORNEY CAROL STRICKMAN | SAN FRANCISCO, CA | 11/27/2017 |

Page 1

SAN JOAQUIN COUNTY CHIEF MEDICAL EXAMINER AND FORENSIC PATHOLOGIST

RESIGNATION LETTER ASSERTING MISCONDUCT FROM SHERIFF STEVE MOORE. ETL...

# Exhibit 2

# Bennet Omalu, MD, MBA, MPH, CPE, DABP-AP,CP,FP,NP

### bennetomalu@bennetomalu.com

December 5, 2017

Monica Nino
County Administrator
44 North San Joaquin Street
Sixth Floor Suite 640
Stockton, CA 95202

Dear Ms. Nino,

### RE: NOTICE OF RESIGNATION FROM SAN JOAQUIN COUNTY

With tears in my eyes and with a very heavy heart, I hereby submit my notice of resignation from San Joaquin County as the County's forensic pathologist. According to the terms of my contract with our beloved county, I have to give a three month notice of resignation, which shall begin on December 5, 2017 and end with the termination of my employment on March 5, 2018. I must stop performing autopsies on December 5, 2017 in order to have sufficient time to complete and close the over 150 pending and open cases I may have.

When I joined this most lovely county in September 2007, I fell in love with it and gave my utmost best to elevate the standards and quality of practice of forensic pathology and death investigation in the County, which had fallen apart. Today, we have collectively done a wonderful job in turning the trajectory of the Coroner's Office and providing the best standards of autopsy, pathology and medico-legal services to the good people of the County. I planned to continue to serve the people of this County until my retirement. In the dark and difficult days of 2005 – 2007, while I was living through my CTE quagmire, I was running away from Pittsburgh and felt homeless, hopeless and afraid. This County offered me a home and gave me hope. For this I am deeply grateful, faithful and loyal to you and the good people of San Joaquin County. I will always remain part of you.

On November 27, 2017, my colleague, Dr. Sue Parson, submitted her letter of resignation. In her letter she stated the following:

> "Despite the privilege of working with Dr. Omalu, the behavior of San Joaquin County Sheriff Steve Moore and the working environment he created within the Coroner's Office made my day-to-day experience in the County personally unbearable and professionally unsustainable. Sheriff Moore's retaliatory behavior, arrogant expectations and of those under his employ, created an utterly untenable work environment – a complete hindrance to my professional growth and development in medicine and the discharging of my duties in a safe, non-threatening work environment, which is due all persons employed by the County under law.
>
> In general terms, Sheriff Moore's intrusion into physician independence ranges from forcefully taking over physician scheduling to inserting himself into how and when Dr. Omalu and I perform our medical duties with attempts to control and influence our professional judgment and conclusions. This ultimately undermines the overall

competence of the Coroner's Office in conducting objective death investigation for the County.

Sheriff Moore's leadership style orders physicians to report, behave, and respond to him like rank-and-file sheriff's officers, producing an intolerable work environment for medical professionals in any stage of her or his career. Despite the framework Dr. Omalu built to enhance and elevate the quality of medicolegal death investigation for the County, I am certain that he too will be unable to continue to work at the Sheriff-Coroner's Office under such conditions, resulting in a massive and wholly avoidable loss to the County."

I must unfortunately stand by and support what Dr. Parson has most succinctly and precisely said. It is extremely unfortunate that it took us over ten years to hire a competent, intelligent and highly qualified forensic pathologist like her, and in less than one year, the Coroner's Office is forcing her to leave due to highly avoidable and unnecessary issues. The office has no concern or issue with Dr. Parson's job performance or competence and she served the County extremely well. This is important because there are less than 1000 board-certified forensic pathologists like her in the United States.

Since I joined the County as a physician employee assigned to the Coroner's Office, Sheriff Steve Moore has always made calculated attempts to control me as a physician and influence my professional judgement. I first experienced this with Sheriff Steve Moore in 2007 when he prevented me from attending crime scenes, which detectives from police departments of other cities may have wanted me to attend, or scenes I wanted to attend, especially on complicated and/or unusual cases. The standards of practice of pathology require forensic pathologists to attend all types of scenes. I wanted to leave then but I believed this interference would stop the longer I stayed in the office and exhibited the highest and exemplary standards of practice. Unfortunately, it did not stop despite the high level of services I performed. In fact, in the past year or two, and especially since Dr. Parson joined the County, it has gotten even worse.

Recently, I became frigidly afraid that in continuing to work under the circumstances Sheriff Steve Moore has created in his office, that I may be aiding and abetting the unlicensed practice of medicine. This would jeopardize my medical license. On many occasions, I met with him privately and provided him written memorandums trying to explain to him that the law does not allow him to insert himself in the duties of a physician unless he is a licensed physician. He dismissed me and stated that Dr. Parson and I work for him, and as long as we were his workers, that we must do anything and everything he asks us to do, even when we considered his actions acting against our standards of practice and the generally accepted principles of medicine. For example, Sheriff Steve Moore decided to cut off the hands of bodies at the morgue after the autopsies had been completed without the knowledge of any of the pathologists in the office.

I recently testified to the truth and scientific facts on a high-profile case involving the County. My testimony was not what the Sheriff wanted me to testify to. Promptly after this occurred, Sheriff Steve Moore retaliated against us and took over the scheduling of physicians in the office in order to control when we work, how we work, what cases we do or not do, and approve or deny our requests for time off or vacation. For the past decade, the physicians in the office handled this scheduling to ensure that the office was fully and properly staffed. Sheriff Steve Moore took this action even though prominent county

Case 2:18-cv-00077-MCE-KJN   Document 16   Filed 03/26/18   Page 9 of 14

Resignation Letter
Bennet Omalu, MD

Page 3 of 4

officials, including leading county physicians, advised him that only a licensed physician can control the working hours of physician employees as required by the guidelines of the Medical Board of California.

I have also witnessed Sheriff Steve Moore humiliate and bully Dr. Parson. Dr. Parson filed a harassment complaint against one of the sergeants in the department. Sheriff Steve Moore summoned a meeting that was supposed to address his effort to take control of the physician's scheduling. However, Sheriff Steve Moore used the meeting to demonstrate his control over us as physician employees. During the meeting, he flung Dr. Parson's complaint at her and condescendingly reminded her that she worked for him and he had the final say on every complaint that is submitted in his office. I was stunned. He retaliated and instructed us that he would remove us as physician employees of the San Joaquin General Hospital, to which both Dr. Parson and I are contractually mandated to have staff privileges, and convert us to Sheriff Forensic Pathologists so that we would lose our physician privileges at the hospital. The Union of American Physicians and Dentists [UAPD], which represents all doctors that work for the County, interjected on our behalf and demanded that the Sheriff cease and desist in his threats and retaliatory action. Dr. Parson and I are both members of UAPD like all of the other doctors in the County.

Unfortunately, this is not the first time that the Sheriff has treated us very differently from other County physicians. For years, Sheriff Steve Moore has refused to afford the pathologists in the Coroner's Office the same benefits and privileges that all other County physicians enjoy. Sheriff Steve Moore withheld and refused to pay Dr. Parson and myself the professional physician benefits to which every physician employee of San Joaquin General Hospital is entitled following a negotiated salary agreement between the UAPD and San Joaquin County in December 2016. While all other County physicians have long been receiving the professional benefits, we unfortunately have been denied the same treatment. In doing so, Sheriff Steve Moore has repeatedly informed us that he does not believe our salaries and benefits should be greater than what he receives because "we work for him" and "he is our boss." We have been forced to pursue this matter through the County merely to ensure that we are treated equally.

While the foregoing has occurred, I reached out to a neighboring county to find out if our experience with Sheriff Steve Moore was similar to that of their forensic pathologist. I was shocked to learn that the forensic pathologist in the other county had met with their Sheriff privately only 2 or 3 times in the ten years in which he has been the county forensic pathologist and that their Sheriff affords him complete independence to perform his job duties. For Dr. Parson and I, Sheriff Steve Moore routinely inserts himself in our daily duties as physicians, routinely summons us to meetings, sometimes privately, to question our autopsy reports and findings, and, on occasion, requests that I modify my autopsy reports. One such case involved an individual who died during a physical altercation with the police. I refused to comply with this request because it was not proper. After we completed and closed autopsy cases, an attorney, a family member or a physician sometimes contact us directly to ask questions about our conclusions in the Coroner's report. We learned that changes were made to the Coroner's report without any form of consultation or expert advice from any of the pathologists employed in the office. Some of these changes may go against the generally accepted principles, standards of practice and common knowledge of medicine. It was our professional duty as physician employees of the office to advise the office on such matters and to guarantee that the office adheres to these standards and principles.

Several months ago, I received a phone call from an attorney who was representing the family of a man who had recently died in a motor vehicle crash. The family wanted to do a second autopsy after my autopsy because they did not believe and trust that my eventual conclusions and opinions would not be

influenced by Sheriff Steve Moore. That phone call bothered me and caused me to begin to suspect that the pervasive and adversarial environment in which I was working could be influencing my professional judgement, opinions and conclusions, without me knowing it. At this moment I realized that I had to leave to seek employment in another County in California where the Sheriff is not like Sheriff Steve Moore.

I want to thank you and the good people of San Joaquin County for supporting me, believing in me and giving me a home for over ten years. I feel like we are all part of the greater San Joaquin Family. I will remain in the Central Valley and will make myself available to assist you in any way I can to serve the residents of the County. Together we can do unimaginable things.

Thank you.


Very truly yours,

*[signature]*

Bennet Omalu, MD, MBA, MPH, CPE, DABP-AP,CP,FP,NP
Anatomic Pathologist/Clinical Pathologist/Forensic Pathologist/Neuropathologist/Epidemiologist

12/6/2017  'Concussion' doctor quits San Joaquin County job; says sheriff interferes in death investigations | The Sacramento Bee

Case 2:18-cv-00077-MCE-KJN   Document 16   Filed 03/26/18   Page 11 of 14

🔖 BOOKMARK FOR LATER                                                                                       MY BOOKMARKS ➔

 

Doctor says concussions aren't the issue for NFL players, it's brain damage   0:54

LOCAL

# Hands removed, findings changed: Pathologists say San Joaquin sheriff 'does whatever he feels like doing'

BY BENJY EGEL, ANITA CHABRIA AND ELLEN GARRISON
begel@sacbee.com

**DECEMBER 05, 2017 10:46 AM**

Hands chopped off bodies; corpses left to deteriorate; doctors pressured to classify officer-involved deaths as accidents rather than homicides: San Joaquin County's two forensic pathologists resigned in recent days over what they said was intolerable interference by Sheriff-Coroner Steve Moore.

Dr. Bennet Omalu Tuesday announced his resignation as San Joaquin County's chief medical examiner. Last week, Omalu's colleague Susan Parson announced her resignation. Under Moore, they said, the county has failed to adequately investigate deaths in the Central Valley.

The two pathologists have been documenting events inside the Sheriff-Coroner's operation for months. The pair publicly released more than 100 pages of memos this week detailing their allegations, in addition to sending them to the San Joaquin County Board of Supervisors and the county district attorney in a push for a broader investigation.

ADVERTISING

12/6/2017 'Concussion' doctor quits San Joaquin County job; says sheriff interferes in death investigations | The Sacramento Bee

Case 2:18-cv-00077-MCE-KJN   Document 16   Filed 03/26/18   Page 12 of 14



"The sheriff does whatever he feels like doing as the coroner, in total disregard of bioethics, standards of practice of medicine and the generally accepted principles of medicine," Omalu wrote in a memo dated Aug. 22.

To print the document, click the "Original Document" link to open the original PDF. At this time it is not possible to print the document with annotations.

Omalu is a nationally recognized forensic pathologist best known for his work on concussion-related brain injuries sustained by many football players. He is also a volunteer associate clinical professor at the University of California, Davis. His work was turned into the 2015 film "Concussion," starring Will Smith as Omalu.

"The sheriff is interfering with the doctors' ability to do their job and he is trying to influence their decisions," said Patricia Hernandez, the union representative for both Omalu and Parson, who declined to be interviewed. "I would call it rogue mismanagement."

San Joaquin County Sheriff's office public information officer Dave Konecny did not return a call for comment. Moore posted a statement on Facebook on Nov. 28 that said he takes "my job extremely seriously."

"As Coroner, the law requires me to make the final determination in the manner of death of each case processed here at the Office," Moore wrote. "I want to make it clear that at no time did I attempt to control or influence (Parson's) professional judgment and conclusions."

Moore has served as the county sheriff since 2007. He will be up for re-election in November 2018.

Omalu alleges the sheriff on multiple occasions asked him to change his findings on the manner of death in officer-involved cases – including three officer-involved deaths in 2016.

"Before I began my documentation in May 2017, I had observed long before this that the sheriff was using his political office as the coroner to influence the death investigation of persons who die while in custody or during arrest by the police," Omalu wrote in the Aug. 22 memo. "I had thought that this was initially an anomaly, but now, especially beginning in 2016, it has become routine practice."

Omalu said the first time Moore asked him to change his finding in an officer-involved case was in 2008, when Omalu wrote that "information was intentionally withheld from me by the sheriff in order to mislead me from determining the case was a homicide."

Omalu ruled that death an accident, but revised his finding to homicide after receiving the additional information.

In 2016, Omalu said the sheriff again pressured him to change his finding in an officer-involved case, this one involving the death of Filberto Valencia, 26.

Valencia's family told media he was a schizophrenic having a mental episode. The family called police for help, but Valencia left the home and attempted to enter other nearby houses before eventually gaining access to a residential facility. There, he barricaded himself in a bathroom with a 10-year-old girl and three women, according to the family's attorney, Walter Walker.

**RELATED STORIES FROM THE SACRAMENTO BEE**

'Concussion' doctor Omalu receives top sports medicine award

12/6/2017 'Concussion' doctor quits San Joaquin County job; says sheriff interferes in death investigations | The Sacramento Bee

Case 2:18-cv-00077-MCE-KJN   Document 16   Filed 03/26/18   Page 13 of 14





UC Davis researchers: It doesn't take a concussion to cause long-term brain injury

Walker said a Stockton police officer hit Valencia over the head twice with the butt of a gun before repeatedly punching him. A second officer hit him with a baton, while a third officer shot him four times with a Taser, said Walker. Valencia became unresponsive and died.

Omalu found Valencia's death was due to blunt force trauma and ruled it a homicide – a medical finding meaning death at the hands of another human. The medical ruling of homicide is different from a legal ruling, but Omalu wrote that the sheriff wanted it changed.

"The sheriff called me into his office and told me that he wanted to make it an accident since officers were involved," wrote Omalu. "I told him that he may have died from the trauma he suffered in the first fight involving other citizens who were not police officers. ... He said that I should amend my report and state that he died from the civilians and not the police officers. I told him I could not do it, first it was unethical and wrong."

The Valencia family has filed a federal civil rights lawsuit in the case.

Then, on Aug. 21, Omalu alleged Moore came to him again, asking him to change his finding in a case that had happened about a year earlier, in 2016. Samuel Augustine, 57, died after what media described as a "violent fight" with officers. Augustine, a sex offender, had been attempting to light a fire near a bridge and was armed with a sledgehammer and machete, though he dropped them as officers approached, according to media reports.

Omalu found Augustine had died as a result of "traumatic brain and spinal cord injury during police arrest." Moore disputed that.

Omalu recalled that Moore told him in a meeting that "he did not see what the police did wrong in their arrest of the individual, and there was nothing in the medical records to support the autopsy findings," he wrote. "In his mind, he seems to believe that every officer involved death should be ruled an accident because police did not mean to kill anyone."

Parson and Omalu also allege that the sheriff's staff ordered the hands be cut off of at least five corpses this year to be sent to a forensics lab to identify the deceased. Omalu and Parson both said that in some instances, the victims' identity was already known and in others, police failed to attempt to identify the dead by investigative means.

"These individuals were found dead at their residences and were positively identified by either a neighbor or a family member," Omalu wrote in a May 25 memo. "In my opinion, taking out the hands of these cases, was a form of body mutilation, which we should not be doing."

Independent forensic pathologist Judy Melinek, who consults on legal cases from San Francisco, said removing the hands for identification was "bizarre" and confirmed it was not a standard practice.

"I have no idea why that would be medically necessary or forensically necessary," Melinek said. "You don't need to do this for identification purposes. You could just take fingerprints."

12/6/2017 'Concussion' doctor quits San Joaquin County job; says sheriff interferes in death investigations | The Sacramento Bee

Case 2:18-cv-00077-MCE-KJN   Document 16   Filed 03/26/18   Page 14 of 14

Omalu also charged that staff at the coroner's office, under the sheriff's control, often took months to do routine paperwork and at times failed to account for the bodies in the morgue. In dozens of instances, the two pathologists said sheriff's staff failed to provide even basic information about deceased people such as the circumstances and location where they were found, impeding the ability of the doctors to investigate.

Parson wrote that she was told she was requesting too many medical records on her patients.

Omalu and Parson said the delays meant families regularly had to wait weeks or even months to claim bodies, and that the corpses often decomposed before proper autopsies could be done – making it harder for the pathologists to determine the cause of death.

"This goes way outside and beneath the standards of practice of medicine in the State of California and across the world," Omalu wrote. "For every patient, autopsy or case, information, medical records, police reports and other professional reports must be ready for the physician to review."

Parson and Omalu allege the sheriff and his staff tried to intimidate and harass the pair into cooperating.

In an email from Omalu and Parson to Sgt. Mike Reynolds with the subject line "scheduling of work hours of physicians, physician independence, physician professional judgment and unbiased credibility" sent Aug. 20, Parson and Omalu objected to the sheriff's office forcing them to surrender planning of their schedules, among other conflicts.

"As physicians we are beginning to feel extremely intimidated, harassed, threatened and controlled by some of the practices, cultures and traditions of the Sheriff's Office," the email said. "(They) are beginning to erode our independence as physicians and are beginning to influence our professional judgments, analyses, conclusions and opinions on each and every case we do in the office."

Omalu will continue serving in his role through March 5, according to his letter of resignation. He plans to stop performing autopsies effective immediately to focus on 150 pending and open cases before his departure. Hernandez said both Omalu and Parson have spoken with other counties about new jobs.

Dr. Reed Mellor, a Stockton-based pediatrician and president of the San Joaquin County Medical Society, called the allegations "alarming" and urged authorities to conduct a full investigation of Moore's actions in a statement distributed via the California Medical Association.

"Physician independence is paramount to avoid improper influence on the practice of medicine," Mellor said in the statement. "Physicians have the unique obligation to put the patient first, and thus, they must be empowered to work independently in serving the best needs of the patient."

The San Joaquin County District Attorney's office issued a statement that said it was in receipt of the doctors' allegations and "is in the process of gathering information concerning homicide cases, including deaths relating to law enforcement officer involvement."

## Omalu's resignation letter