XAVIER BECERRA, State Bar No. 118517
Attorney General of California
TAMI M. KRENZIN, State Bar No. 183925
Supervising Deputy Attorney General
DARREN K. INDERMILL, State Bar No. 252122
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7689
 Fax: (916) 324-2960
 E-mail: Darren.Indermill@doj.ca.gov
*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BENJAMIN SERRATOS III,** | 2:18-cv-00077-MCE-KJN |
| Petitioner, | **MOTION TO DISMISS** |
| v. | |
| **PEOPLE OF THE STATE OF CALIFORNIA,** | |
| Respondent. | |

Respondent James Robertson, Warden of Pelican Bay State Prison,[1] moves to dismiss this action because it was filed beyond the one-year statute of limitations in 28 U.S.C. § 2244(d) and, alternatively, because Petitioner failed to exhaust his state remedies prior to filing. Petitioner's motion for stay should be denied.

///

---

[1] Petitioner names an improper Respondent as he names the People of the State of California. A proper Respondent must have day to day control over the Petitioner. Rule 2(b) of the Rules Governing Section 2254 Cases. Petitioner is incarcerated at Pelican Bay State Prison, where James Robertson is the Warden. Accordingly, Respondent requests that this Court substitute James Robertson as Respondent in this matter. *See Brittingham v. United States*, 982 F.2d 378, 379 (9th Cir. 1992).

1

**BACKGROUND**

Petitioner was convicted of second degree murder, gross vehicular manslaughter while intoxicated, two counts of driving under the influence of alcohol causing injury, two counts of driving with a blood-alcohol level of 0.08 percent or higher causing injury, hit and run resulting in death or injury, and driving with a suspended license. A number of sentencing enhancement allegations were found true. On September 11, 2012, Petitioner was sentenced to an indeterminate state prison term of forty-eight years and eight months to life. (Lod. Doc. 1.)

On May 5, 2016, the California Court of Appeal vacated one count each of driving under the influence of alcohol causing injury and driving with a blood-alcohol level of 0.08 percent or higher causing injury. The judgment was affirmed in all other respects. (Lod. Doc. 2.) Review was denied by the California Supreme Court on August 10, 2016. (Lod. Docs. 3-4.)

Petitioner subsequently filed three pro se state post-conviction collateral challenges to the pertinent judgment, all petitions for writs of habeas corpus:[2]

First Action

November 8, 2017:  Petition for post-conviction relief filed in the state appellate court (Lod. Doc. 5);

November 21, 2017:  Petition denied (Lod. Doc. 6);

Second Action

November 8, 2017:  Petition for post-conviction relief filed in the state supreme court (Lod. Doc. 7);

February 14, 2018:  Petition denied with a citation to In re Robbins, 18 Cal.4th 770, 780 (1998) (Lod. Doc. 8);

///

---

[2] Respondent has given the listed filing dates of the state and federal petitions the benefit of the mailbox rule. *See Campbell v. Henry*, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings by incarcerated inmates). The federal and state superior court petitions were likely mailed the same day. The federal and state superior court petitions were dated the same day, but the federal petition, unlike the state superior court petition, does not contain a proof of service. It is likely the federal petition was mailed the same day as the state superior court petition. Even so, without conceding the issue, Respondent will consider the federal petition filed as of the date it was signed. (Dkt. 1; Lod. Doc. 9.)

Third Action

January 4, 2018: Petition for post-conviction relief filed in the state superior court (Lod. Doc. 9); and

March 22, 2018: Petition denied (Lod. Doc. 10).

Petitioner filed the instant action on December 28, 2017. (Dkt. 1.)

## ARGUMENT

### I.    THE FEDERAL PETITION IS UNTIMELY AND SHOULD BE DISMISSED

State prisoners who apply for federal habeas corpus relief must comply with the one-year statute of limitations set forth in 28 U.S.C. § 2244(d). As explained below, Petitioner filed his application for federal habeas relief on December 28, 2017, after expiration of the limitations period. Respondent therefore requests the petition be dismissed with prejudice.

### A.    The Limitations Period Begins

A state prisoner challenging his custody has one year to file a federal petition from the date on which the judgment became final by the conclusion of direct review, or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A).[3]

Review was denied by the state supreme court on August 10, 2016. (Lod. Doc. 4.) The time to seek direct review ended on November 8, 2016, when the ninety-day period to file a petition for writ of certiorari in the United States Supreme Court expired. Supreme Court rule 13; *Velasquez v. Kirkland*, 639 F.3d 964, 965 (9th Cir. 2011). The one-year limitations period commenced running the following day—November 9, 2016. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (citing Fed. R. Civ. P. 6(a)). Thus, the last day to file a federal petition was on November 8, 2017, plus any time for tolling.

### B.    Tolling

The proper filing of a state post-conviction application with respect to the pertinent judgment or claim tolls the one-year limitations period. 28 U.S.C. § 2244(d)(2). Here, Petitioner

---

[3] The limitations period may begin running later under certain specified circumstances, none of which are applicable here. 28 U.S.C. § 2244(d)(1)(B)-(D).

3

filed three pro se state post-conviction collateral actions challenging the pertinent judgment, all petitions for writs of habeas corpus.

### 1. The Limitations Period that Elapsed Before the First State Action was Filed

Interval tolling between finality of direct review on November 8, 2016, and the filing of the first state post-conviction action on November 8, 2017, is not appropriate. (Lod. Doc. 5.) This is so because the limitations period is not tolled between finality of direct review and the filing of an application for post-conviction review since no state court application is "pending." 28 U.S.C. § 2244(d)(2); *see, e.g., Lawrence v. Florida*, 549 U.S. 327, 330 (2007) (explaining that the limitations period ran for 364 days between the date the conviction became final and the date the first petition for state post-conviction relief was filed). Consequently, 364 days of the limitations period expired before Petitioner filed his first state post-conviction collateral action.

### 2. Tolling for the Time Period the First State Action was Pending[4]

The first state action was filed in the state appellate court on November 8, 2017, and was denied fourteen days later, on November 21, 2017. (Lod. Docs. 5-6.) The first state action extended the limitations period fourteen days, from November 8, 2017, to November 22, 2017. *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (state habeas petitions meeting state's filing requirements are properly filed within the meaning of 28 U.S.C. § 2244(d)(2)).

### 3. No Tolling for the Time Period the Second State Action was Pending

Petitioner's second state action was filed in the state supreme court on November 8, 2017, and was denied ninety-nine days later, on February 14, 2018. (Lod. Docs. 7-8.) Fourteen days of the ninety-nine-day period was subsumed by the pendency of the first state action. (Lod. Docs. 5-6.) Thus, at best, the second state action could extend the limitations period eighty-five days. However, tolling for the pendency of the second state action is not appropriate because it was

---

[4] Petitioner's state appellate court and state supreme court petitions—the first and second state actions—were constructively filed on the same day. (Lod. Docs. 5, 7.) Respondent has chosen to list the state appellate court petition first because it was denied first and presents Petitioner with a more orderly progression. However, as explained below, the precise order of listing is of no consequence. Petitioner would not be entitled to additional tolling if the actions were listed in a different order.

4

improperly filed. The state supreme court denied the second state action with a citation to *In re Robbins*, 18 Cal.4th at 780. (Lod. Doc. 8.) *Robbins* stands for the proposition that delayed and repetitious claims will not be entertained. As such, the second state action was not properly filed for purposes of 28 U.S.C. § 2244(d)(2). *Pace v. DiGulielmo*, 544 U.S. at 414-15 (holding a petition for writ of habeas corpus rejected by a state court as untimely is not "properly filed" within the meaning of the statutory tolling provision of AEDPA); *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007) (holding that a citation to *Robbins* at 780 means the petition was untimely); *Bonner v. Carey*, 425 F.3d 1145, 1149 (9th Cir. 2005) (petition dismissed as untimely by a California court is not "properly filed" and, in turn, not entitled to tolling). The statute of limitations, which only had one day remaining, expired during that time period.

### C. The Limitations Period Ends

The statute of limitations commenced on November 9, 2016. There were 364 untolled days before Petitioner filed his first state action and 85 more days passed during the time his improperly filed second state action was pending. The one-year limitations period, after being extended fourteen days for the pendency of Petitioner's first state action, expired on November 22, 2017. Since Petitioner did not file his federal petition until December 28, 2017, he exceeded the one year allowed under § 2244(d) by over one month, and this action is time barred.

### D. Subsequent State Post-Conviction Action Does Not Toll the Limitations Period

Petitioner's third state action does not toll the one-year statue of limitations. (Lod. Docs. 9-10.) The third action was not filed until January 4, 2018, over one month after the statute of limitations expired. (Lod. Doc. 9.) It is well-established that the filing of a state collateral action after expiration of the limitations period does not restart the clock at zero or otherwise save a claim from being time barred. In other words, once the statute has run, a collateral action cannot revive it. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001). Consequently, the third state action cannot serve to extend the limitations period.

### E. Order of Petitions is of No Consequence

The inability to toll the limitations period is not relieved by reordering the filing of Petitioner's state actions. Although the third state action was filed in less than sixty days from the date the first state action was denied (the first and second state actions were filed on the same day, making a reverse ordering appropriate) gap tolling for the third state action is not available. No matter the ordering of the first and second state actions, filed in the state appellate and supreme courts, Petitioner proceeded downward to the state superior court with the filing of his third state petition. His downward progression forecloses gap tolling. Petitioner started a new round of challenges with the filing of his third state action. *See Delhomme v. Ramirez*, 340 F.3d 817, 820 (9th Cir. 2003) (holding that a petitioner begins a separate round of review "each time [he] files a new habeas petition at the same or a lower level" of the state court system). Interval tolling is not appropriate for the time period between separate rounds of challenges. *Smith v. Duncan*, 297 F.3d 809, 815 (9th Cir. 2002) (no tolling during gap between first set of state petitions and second); *see also Welch v. Carey*, 350 F.3d 1079, 1083 (9th Cir. 2003) (*en banc*) (noting that tolling is intended to accommodate "'one full round,' not two full rounds").

### F. Since this Action is Untimely, a Stay to Allow Exhaustion would be Futile

The untimeliness of this action makes any stay to allow for the exhaustion of state remedies futile. There is no good cause to grant a stay where the action must ultimately be dismissed as untimely. *See Rhines v. Weber*, 544 U.S. 269, 275 (2005) (holding that the stay and abeyance procedure may protect a petitioner who has timely filed a mixed petition in federal court from the AEDPA limitations after exhausting in state court); *Smith v. Horel*, 2008 WL 2038855, *5 (C.D. Cal. 2008) (finding a grant of stay inappropriate in light of the fact that the federal petition was untimely).

## II. ALTERNATIVELY, THE FEDERAL PETITION SHOULD BE DISMISSED AS UNEXHAUSTED AND PETITIONER HAS NOT SHOWN HE IS ENTITLED TO A STAY

If this Court somehow finds the federal petition timely, the petition should still be dismissed as unexhausted because Petitioner did not exhaust all his claims before filing his federal petition.

Petitioner raised eleven federal claims, several of which include a myriad of sub-claims. (Dkt. 1.) At the time he filed his federal petition and motion for stay, only the following allegations had been exhausted in his state supreme court petition for review: (1) there was insufficient evidence to support his second degree murder conviction, (2) the trial court abused its discretion in denying his motion to continue the trial, (3) trial counsel was ineffective because he failed to have the victim's cellphone records forensically examined and failed to argue that arraignment counsel was ineffective for consenting to have the victim's vehicle released to be destroyed, and (4) the trial court abused its discretion by limiting the time for the defense to present a new trial motion. (Lod. Docs. 3-4.) The remainder of Petitioner's federal claims were unexhausted because he had raised them in his state supreme court habeas filing which was still pending at the time he filed his federal petition and motion for stay. (Lod. Docs. 7-8.) Respondent assumes that Petitioner filed a request for a stay because the federal claims raised in his state supreme court habeas petition were unexhausted.

Respondent recognizes that Petitioner has now exhausted all of his claims because the state supreme court has ruled on his habeas petition. (Lod. Docs. 7-8; Dkts. 15-16.) However, those claims were not exhausted at the time Petitioner filed his federal petition, and the federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1), *e.g., Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998); *see Granberry v. Greer*, 481 U.S. 129 (1987); *Rose v. Lundy*, 455 U.S. 509, 516-18 (1982); *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993).

Petitioner's failure to exhaust his claims prior to filing the instant petition is fatal. In determining whether a habeas petition is exhausted, a federal court does not look to post-filing events, but instead must act as if a dismissal that "immediately" should have occurred, did occur. *Jiminez v. Rice*, 276 F.3d at 481. Thus, claims that were "previously unexhausted"—i.e., unexhausted at the time of filing—remain so for purposes of decision,

> because "[t]he appropriate time to assess whether a prisoner has exhausted his state remedies is when the federal habeas petition is filed, not when it comes on for a

7

Motion to Dismiss (2:18-cv-00077-MCE-KJN)

hearing in the district court or court of appeals." *Gatlin v. Madding*, 189 F.3d 882, 889 (9th Cir. 1999) (quoting *Brown v. Maass*, 11 F.3d 914, 915 (9th Cir. 1993)).

*Romero v. Harrington*, 441 F. Appx. 425, 426 (9th Cir. 2011).

And, Petitioner is not entitled to a stay under *Rhines*. A district court has discretion to stay a mixed petition to allow a petitioner time to return to state court to present the unexhausted claims. *Rhines*, 544 U.S. at 276. Petitioner has not met the requirements needed for a *Rhines* stay. *Rhines* allows a mixed petition to be stayed only in limited circumstances, and only when: (1) there is "good cause" for the failure to exhaust; (2) the unexhausted claims are potentially meritorious; and (3) the petitioner did not intentionally engage in dilatory litigation tactics. *Id.* at 277-78.

Neither the Supreme Court nor the Ninth Circuit have expressly defined good cause under *Rhines*. The Ninth Circuit has noted that good cause does not demand a petitioner meet a more stringent showing of "extraordinary circumstances." *Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005.) Under an application of the *Rhines* good cause standard, or the "excusable neglect" standard, "counsel's oversight . . . do[es] not constitute good cause" for failing to exhaust claims in state court. *Corjassov. Ayers*, No. CIVS 970018 GEBGGHP, 2006 WL 618380 at *3 (E.D. Cal. March 9, 2006). *Corjasso* distinguished between the *Rhines* good cause standard and simple negligence, reasoning that "[t]he point is whether some outside, uncontrollable event precluded the bringing of the [] issue." *Id.* at *2. In that case, the district court was not persuaded that counsel's work load and oversight of the unexhausted claim failed to constitute good cause, reasoning that "[i]f the court found these circumstances to justify the delay, then good cause could be found in virtually every case, which the Supreme Court clearly did not intend in *Rhines*." *Id.* at *3. The Supreme Court explained in Pace that "A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Pace v. DiGuglielmo*, 544 U.S. at 416 (citing *Rhines v. Weber*, 544 U.S. at 278).

Here, Petitioner has not met all three requirements of *Rhines*. Acknowledging the "good cause" requirement of *Rhines*, he stresses he filed a protective petition "[i]n order . . . to abide by

8

court rules and not incur any potential procedure [sic] violations and untimely ruling . . . ." (Dkt. 4 at 3.) His claim does not suffice to establish good cause under *Rhines*, and is belied by his lack of diligence in pursuing state remedies. Petitioner waited until only one day remained of the statute of limitations before he started to challenge his conviction. (Lod. Doc. 5.) Surely if Petitioner was concerned that time would run out, he would not have waited until one day before the limitations period was set to expire to challenge his conviction. His delay in even starting this process indicates a lack of diligence. Consequently, he has not established good cause for a stay.

## CONCLUSION

Respondent respectfully requests that the federal petition be dismissed with prejudice as untimely or, in the alternative, without prejudice as unexhausted, and that his motion for stay be denied.

Dated: May 4, 2018

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
TAMI M. KRENZIN
Supervising Deputy Attorney General


/S/ DARREN K. INDERMILL
DARREN K. INDERMILL
Deputy Attorney General
*Attorneys for Respondent*

SA2018300837
33383905.docx

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name: **Serratos v. People**
No.: **2:18-cv-00077-MCE-KJN**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On May 4, 2018, I served the attached **Motion to Dismiss** by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Office of the Attorney General at 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550, addressed as follows:

Benjamin Serratos, III
CDCR No. AM-3717
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA  95532-7500

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on May 4, 2018, at Sacramento, California.

| M. Sanchez | /S/ M. SANCHEZ |
|---|---|
| Declarant | Signature |

SA2018300837
33361061.docx